Filed 7/8/22  P. v. Rubalcaba CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FELIPE CELIS RUBALCABA,<br><br>    Defendant and Appellant. | D079882<br><br><br><br>(Super. Ct. No. 17CR-00019-RF) |

APPEAL from a judgment of the Superior Court of Merced County, Jeanne Schechter, Judge.  Convictions affirmed; sentence vacated and remanded with directions.

Rebecca P. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters and Michael P. Farrell, Assistant Attorneys General, Carlos A. Martinez and Chung Mi Choi, Deputy Attorneys General for Plaintiff and Respondent.

A jury convicted Felipe Celis Rubalcaba of continuous sexual abuse

(Pen. Code,[1] § 288.5, subd. (a); count 1) and lewd acts upon a child under the age of 14 years (§ 288, subd. (a); counts 3, 4, 5, 7). It found true allegations as to each count that Rubalcaba committed lewd acts upon multiple child victims. (§ 667.61, subd. (c).)[2]

The court sentenced Rubalcaba to 61 years to life with the possibility of parole, imposing the upper term of 16 years on count 1; consecutive15-year-to-life terms on counts 3, 5, and 7; and a concurrent 15-year-to-life term on count 4. The court also imposed various fines and fees.

Rubalcaba contends the trial court erroneously: (1) allowed the prosecution to amend count 3 of the information in violation of section 1009 and his constitutional right to due process; (2) instructed the jury with CALCRIM No. 1190; and (3) imposed certain fines, fees and assessments without ascertaining his ability to pay them. In supplemental briefing, Rubalcaba contends that he is entitled to resentencing after Senate Bill No. 567 modified sections 1170 and 1170.1 to limit a court's discretion to impose an upper term sentence. We affirm the convictions, vacate the sentence and remand with directions set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

As Rubalcaba does not challenge the sufficiency of the evidence to support his convictions, we set forth the facts relating only to his crimes against C.M. to provide context for his contention that we should reverse his count 3 conviction because the court improperly amended the information.

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     Count 1 related to victim A.O.; counts 3 and 4 related to victim C.M.; count 5 related to victim C.G.; and count 7 related to victim A.M. The court dismissed count 2 at the prosecutor's request, and the jury found Rubalcaba not guilty of count 6.

C.M. was 29 years old at the time of trial, and testified that as a minor he lived in El Nido, California, across the street from his best friend, whose father was Rubalcaba. Starting when C.M. was 12 years old, Rubalcaba touched C.M. inappropriately more than five times, including touching C.M.'s buttocks and penis when C.M. slept over at Rubalcaba's house. Rubalcaba used to let C.M. sit in his lap and drive Rubalcaba's car. On one such occasion, when C.M. was 12 years old, Rubalcaba touched C.M.'s chest and stomach under his clothes. On another occasion, Rubalcaba took him to pick grapes and told him to suck Rubalcaba's penis, and C.M. did so briefly. C.M. moved to San Francisco when he was 12 years old.

*Motion to Amend the Information*

At the end of the People's case-in chief, the prosecutor moved to amend the information to conform to proof. Specifically, she sought to expand by two years the date range of Rubalcaba's offenses against C.M.; that is, from the originally stated period of October 25, 1997, through October 24, 2000, to a new end date of October 24, 2002. She argued: "In sexual assault cases, particularly sexual assault cases of minors, it is not uncommon . . . that we have to amend [the information] to reflect what their sworn testimony is because these events occurred so long ago."

Defense counsel objected that the proposed amendment "cover[ed] a longer period of time than what was alleged in . . . the first amended complaint deemed information." He added that "changing the dates is a last-ditch effort by the prosecution to bolster the credibility of witnesses whose testimony was at best bumpy and nonspecific." He also objected that the court would deprive him of an opportunity to further cross-examine the victims regarding their prior inconsistent preliminary hearing testimony.

3

The court granted the proposed amendment of the information, finding no prejudice to the defense. Referring to the preliminary hearing transcript, the court stated regarding count three: "[C.M.] did testify . . . question, 'did you touch your mouth to [Rubalcaba's] penis any other time?' Answer. 'That was the only time.' . . . [I]t's clear from the testimony that [C.M.] only testified to one incident. His testimony was . . .[it occurred around age 10 or 11]. [¶] It's clear from the preliminary hearing transcript as a whole that these time periods . . . with all of these alleged victims . . . is all in the same time period, the same number of years, when [Rubalcaba] had access to them when they were visiting on a regular basis. [¶] And so I think that the amendment to count three expanding the time—it's really just by an additional two years—is appropriate."

The court also explained: "[I]f this was a situation in which [the defense] were going to present—let's say an alibi defense. Say [ ] Rubalcaba didn't even live there from, you know, 2000 to 2002, he never saw [C.M.] during that time period, then yes. I think that would be prejudicial because now you presented [an] alibi defense. But the only thing [the defense is] arguing here is credibility. And the issue is the jury is either going to believe [C.M.], or they're not going to believe him." The court added: "[A]s far as Rubalcaba being on notice as to what he has to defend against, this is not adding a new charge. The charge is [section] 288, a lewd and lascivious act. It's not changing the crime. It's not adding a new crime. It's just changing it to conform to what was actually testified to at trial. And . . . that's allowed. And especially in a situation like this, we've heard a lot of rather generic testimony from the witnesses. [¶] And in the types of cases—the courts have been very clear that generic testimony is acceptable. Just because they may fail to specify extremely precise dates, times, places, or circumstances doesn't

4

render the testimony insufficient, and there was a general time period described here . . . and [C.M.] clearly testified to this. It's the preliminary hearing transcript that really is what puts you on notice."[3]

The court allowed the defense to recall the victims to testify. When C.M. testified again the next day, defense counsel's only questions revolved around a purported discrepancy between C.M.'s testimony at the preliminary hearing and at trial regarding whether C.M. had discussed with another victim Rubalcaba's improper conduct towards them.

*Defense Counsel's Closing Arguments*

Defense counsel addressed the amended information in closing arguments: "Counts three through seven. Why are the dates so nonspecific? You have a particular conduct that's described in each count, but the date ranges are October 25[,]1997, until five years later, October 24[,] 2002, for one incident that they described. Why can't you be more specific, [C.M. and

---

[3]    The court instructed the jury regarding amended counts 3 and 4: "Count three is still a violation of Penal Code section 288[, subdivision (a)], lewd act upon a child. And [the amended information] states 'on or between August 25[,] 1997, [*sic*] and October 24[,] 2002, [ ] Rubalcaba did willfully, unlawfully, and lewdly commit a lewd and lascivious act upon or with the body or certain parts or members of [C.M.], a child under the age of 14, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of the said defendant or said child, to wit, the first time the defendant touched [C.M.] while riding in the defendant's car.' [¶] Count four, again a violation of Penal Code section 288[, subdivision (a)], in which [the amended information] states 'on or between October 25[,] 1997, and October 24[,] 2002, [ ] Rubalcaba did willfully, unlawfully, and lewdly commit a lewd and lascivious act upon or with the body or certain parts or members of [C.M.], a child under the age of 14 with the intent of arousing, appealing to, or gratifying the lusts, passions, or sexual desires of the said defendant, or said child, to wit, the time the defendant had [C.M.] touch his mouth to the defendant's penis.' "

5

other victims]?  These are fair and necessary questions you must pose to yourself and others back in the jury deliberation room.”

Defense counsel challenged the victims’ credibility:  “Nobody witnessed any of this [wrongdoing] going on.  No behavior [was shown] for any of those supposed victims of [ ] Rubalcaba consistent with persistent victimization as a child for sex crimes.  [C.M.] doesn’t even remember a time when [another victim] was even at the Rubalcaba address.  [¶]  Both my recollection of the testimony is that both [C.M. and another victim] stated these things happened between five-to-10 times to each of them.  That’s what they initially reported, then it becomes every weekend.  This is a huge difference.  You don’t get that wrong.  How does your memory—how do you suddenly remember 52 times [ ] versus five-to-10 . . . over a period of four years?  You don’t.  It either happened as many times as it happened, or it didn’t.  There’s no believable explanation for why there would be that magnitude of discrepancy.”

Defense counsel added:  “If there’s no motive here to fabricate or exaggerate, why tell even a single lie?  [C.M. and another victim] said they never talked about this until January of 2017, when they were adults when I cross-examined them.  Until they had to admit that they’ve previously said under oath they talked about it when they were children.  No motive to lie.  Why tell that one then?  You think they forgot that conversation?  No.  They thought they could get away with the different answer.  That’s the hard truth.”

Defense counsel also argued:  “[Two victims] each chose to go back to [Rubalcaba’s] home over and over again. . . .  In fact, [C.M. and another victim] chose to keep coming back there every weekend, even though they lived two and a half hours away in the Bay [Area], even though their mom

6

didn't drive, didn't want to drive that far to go there alone to be victimized. No. Don't believe this stuff."

## DISCUSSION

### I. *The Amended Information*

Rubalcaba contends we should reverse his count 3 conviction because the amended information "amounted to a new abuse allegation" not proved at the preliminary hearing. He claims that by belatedly "allowing the prosecution to expand the time frame by two years, the court prevented [him] from investigating any possible defense to acts alleged during the additional period of time—from 2000 through 2002," violating his constitutional right to due process.

### A. *Applicable Law*

Section 1009 authorizes the trial court to "permit an amendment of an . . . information . . . for any defect or insufficiency, at any stage of the proceedings . . . unless the substantial rights of the defendant would be prejudiced thereby." However, an information may not be amended "so as to charge an offense not shown by the evidence taken at the preliminary examination." (§ 1009.) This limitation preserves the defendant's due process right to notice of the charges against him or her, to have a reasonable opportunity to prepare and present a defense, and to not be taken by surprise by the trial evidence. (*People v. Graff* (2009) 170 Cal.App.4th 345, 360.) The California Supreme Court has explained that "notice of the particular circumstances of an alleged crime is provided by the evidence presented to the committing magistrate at the preliminary examination, not by a factually detailed information." (*People v. Jennings* (1991) 53 Cal.3d 334, 358.)

This court reviews the trial court's decision for abuse of discretion. (*People v. Miralrio* (2008) 167 Cal.App.4th 448, 458; *People v. Bolden* (1996)

7

44 Cal.App.4th 707, 716.) In *People v. Jones* (1990) 51 Cal.3d 294, the California Supreme Court recognized the difficult problems of proof when a young victim has been molested, because a young victim—or even an adult— "may have no practical way of recollecting, reconstructing, distinguishing or identifying by 'specific incidents or dates' all or even any such incidents." (*Jones*, at p. 305.) The court balanced these problems of proof with the defendant's right to fair notice of the charges against him and a reasonable opportunity to defend against those charges. With respect to notice, the *Jones* court found that "the defendant has no right to notice of the specific time or place of an offense, so long as it occurred within the applicable limitation period." (*Id*. at p. 317.) The court concluded that "given the availability of the preliminary hearing, demurrer and pretrial discovery procedures, the prosecution of child molestation charges based on generic testimony does not, of itself, result in a denial of a defendant's due process right to fair notice of the charges against him." (*Id*. at p. 318.) With respect to the right to present a defense, the *Jones* court concluded that the victim's inability to recall or relate specific dates, locations, or other details of the offenses did not inevitably preclude a defense. *Jones* observed that alibi or identity defenses were rarely raised in resident child molester cases. Usually, trial centered on the relative credibility of the accuser and the accused. (*Id*. at pp. 313, 319.)

B. *Analysis*

We preliminarily point out that the defense availed itself of the opportunity to recall C.M. to testify regarding inconsistencies in his preliminary hearing and trial testimony, therefore reducing any prejudice to Rubalcaba caused by the information's late amendment. Next, as set forth above, the trial evidence did not support the original information's claim

Rubalcaba committed the crimes against C.M. before 2002. The information was therefore properly amended to allege the correct date range for the two specific crimes alleged: that of the touching while C.M. was driving Rubalcaba's vehicle (count 3) and that of the oral copulation (count 4). The amended information showed the crimes occurred when C.M. was 12 years old. This age is still encompassed by section 288, subdivision (a), because C.M. was under 14 years of age. As set forth above, defense counsel in closing addressed the problems of proof presented by the information's expanded date range, and urged the jury to find the victims not credible. The evidence adduced at the preliminary examination was sufficient to provide Rubalcaba with notice that he committed the charged acts. The court committed no error, constitutional or otherwise, in permitting the information to be so amended.

## II. *CALCRIM No. 1190*

Rubalcaba contends the court's instruction with CALCRIM No. 1190 prejudiced him because it "improperly suggested that jurors should view complaining witness credibility in sex cases by a different[ ] and lower[ ] standard."

A. *Background*

Rubalcaba's defense counsel objected to the court instructing the jury with CALCRIM No. 1109 on the grounds it was duplicative of CALCRIM No. 301.[4] Defense counsel further argued that the fact "that [CALCRIM No.] 1190 says specifically in [']sexual assault['] cases is confusing. And I'm afraid

---

4    CALCRIM No. 301 provides: "The testimony of only one witness can prove any fact. Before you conclude that the testimony of the one witness proves a fact, you should carefully review all of the evidence."

CALCRIM No. 1190 provides: "Conviction of a sexual assault crime may be based on the testimony of a complaining witness alone."

it would leave a juror, or the jury as a whole, to believe or conclude that . . . since this is a sexual assault crime as opposed to all other categories of crime . . . [¶] . . . if you give this instruction, it will make it seem like sex offense crimes should be treated differently than all other crimes. And that's . . . not the law."

The court ruled that under *People v. Gammage* (1992) 2 Cal.4th 693 (*Gammage*), both instructions correctly state the law, focus on different legal points, and do not lower the People's burden of proof. It therefore instructed the jury with CALCRIM Nos. 301 and 1190.

Defense counsel in closing arguments stated: "There's a jury instruction I want to draw your attention to. . . . It's [CALCRIM No.] 1190. I want you to look at that one and [CALCRIM No. 301, which] says the testimony of a single witness may be enough to prove a fact if you believe it beyond a reasonable doubt. [CALCRIM No.] 1190 . . . talked specifically about sexual assault cases. [¶] And the point I want to make to you is this: [CALCRIM No.] 1190 says that the testimony of a complaining witness in a sexual assault case is—can be sufficient to convict somebody, but that doesn't mean that the standard is lower somehow in a sexual assault case than in any other case there is . . . because that instruction's in there twice, very similar. I just want to make that point to you."

Defense counsel reiterated to the jury in closing: "I want to go back to . . . [CALCRIM Nos.] 301 and 1190. [']The testimony of only one witness can—can prove any fact. Before you conclude that the testimony of one witness proves a fact, you should carefully review all the evidence.['] Well, what other evidence is there that could cause you to believe that the testimony of [victim A.O.] proved any fact? Is there testimony from another witness that that witness saw it happen? No."

B. *Applicable Law*

In *Gammage*, the defendant contended that the predecessor instructions of CALCRIM Nos. 301 and 1190 "in combination . . . unconstitutionally 'create[ ] a preferential credibility standard for the complaining witness.' " (*Gammage, supra,* 2 Cal.4th at p. 700.) The California Supreme Court rejected this contention: "Although the two instructions overlap to some extent, each has a different focus. [CALCRIM No. 301's predecessor] CALJIC No. 2.27 focuses on how the jury should evaluate a fact (or at least a fact required to be established by the prosecution) proved solely by the testimony of a single witness. It is given with other instructions advising the jury how to engage in the *fact-finding* process. [CALCRIM No. 1190's predecessor] CALJIC No. 10.60, on the other hand, declares a substantive rule of law, that the testimony of the complaining witness need not be corroborated. It is given with other instructions on the legal elements of the charged crimes. [¶] Because of this difference in focus of the instructions, we disagree with defendant . . . that, in combination, the instructions create a preferential credibility standard for the complaining witness, or somehow suggest that that witness is entitled to a special deference. The one instruction merely suggests careful review when a fact depends on the testimony of one witness. The other tells the jury there is no legal corroboration requirement. Neither eviscerates or modifies the other. . . . The instructions in combination are no less correct, and no less fair to both sides, than either is individually." (*Gammage,* at pp. 700-701.)

"Errors in jury instructions are questions of law, which we review de novo." (*People v. Russell* (2006) 144 Cal.App.4th 1415, 1424; *People v. Guiuan* (1998) 18 Cal.4th 558, 569.) "It is well established in California that the correctness of jury instructions is to be determined from the entire charge

11

of the court, not from a consideration of parts of an instruction or from a particular instruction." (*People v. Burgener* (1986) 41 Cal.3d 505, 538, disapproved on a different point in *People v. Reyes* (1998) 19 Cal.4th 743, 756.)

The instructions with CALCRIM Nos. 301 and 1190 do not give the victim's testimony undue prominence and neither do they " 'dilute[ ] the "beyond a reasonable doubt" standard.' " (*Gammage, supra,* 2 Cal.4th at p. 701.) The *Gammage* court concluded: "[T]here remains a continuing vitality in instructing juries that there is no legal requirement of corroboration." (*Ibid.*) Moreover, juries are also instructed that the prosecution must prove its case beyond a reasonable doubt. "This places a heavy burden of persuasion on a complaining witness whose testimony is uncorroborated. CALJIC No. 10.60 does not affect this instruction but . . . when all the instructions are given, 'a balance is struck which protects the rights of both the defendant and the complaining witness.' " (*Gammage,* at p. 701.)

C. *Analysis*

We reject Rubalcaba's claim that *Gammage* is inapplicable because it did not focus on whether CALCRIM No. 1190 suggested that jurors should judge witness credibility by a lower standard in sexual assault cases than in other cases. Here, under *Gammage, supra,* 2 Cal.4th 693, the trial court did not err by instructing the jury with CALCRIM No. 1190. Furthermore, the court instructed the jurors with CALCRIM No. 200 to "[p]ay careful attention to all of these instructions and consider them together." It also instructed them with CALCRIM No. 226 that in determining the credibility or believability of the witnesses they are to use their common sense and experience and may consider anything that reasonably tends to prove or

12

disprove the truth or accuracy of the testimony. CALCRIM No. 226 also lists numerous factors jurors may use to judge witness credibility. Considering the jury instructions as a whole, the trial court did not err by giving CALCRIM No. 1190. There was no reasonable likelihood that the jury was misled by the jury instructions.

Rubalcaba relies on Justice Mosk's concurrence in *Gammage*, which concluded CALJIC No. 10.60 was outdated and unnecessary. We, however, are bound to follow the majority in *Gammage*. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 ["Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction"].) Accordingly, we conclude the trial court did not err in instructing the jury with both CALCRIM Nos. 301 and 1190.

### III. *Senate Bill No. 567*

Rubalcaba contends that under Senate Bill No. 567, which modified sections 1170 and 1170.1 and limited the court's discretion to impose upper term limits, this court should remand the matter for his resentencing.

A. *Background*

In imposing the upper term, the court stated: ". . . [F]or count one, I always start with the Rules of Court. And under [California Rules of Court, rule] 4.421, the Court does find the aggravating factors that the victims were very vulnerable in this case. [Rubalcaba] took advantage of a position of trust. And there were numerous acts that were testified to over the course of nine years. The Court can take into account anything else that it considers to be aggravated. [¶] And so as far as [rule] 4.423, mitigating factors, I do note that [ ] Rubalcaba has no prior record. However, in light of the number of victims, the position of trust that he was in—this was a place where they

13

were supposed to feel safe. And yet when they went over [to Rubalcaba's house], there was frequent abuse occurring, especially with respect to [A.O.] . . . [¶] And from her testimony that she gave, it has had a tremendous impact not only on all the victims, but especially on [A.O.], and has made things unfortunately very difficult for her. And I sincerely hope that [A.O.] and all the victims receive the help that they need and can move on with their lives. [¶] So for count one, the Court does select the upper term of 16 years. And I do feel that is the just sentence in this case, as well, taking into consideration everything."

B. *Applicable Law*

At the time of defendant's sentencing, section 1170, former subdivision (b), provided that the choice between sentencing a defendant to the lower, middle, or upper term "shall rest within the sound discretion of the court," with the court to determine which term "best serves the interests of justice." (§ 1170, former subd. (b).)

Under Senate Bill No. 567, section 1170, subdivision (b) has been amended to make the middle term the presumptive sentence for a term of imprisonment; a court now must impose the middle term for any offense that provides for a sentencing triad unless "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(1) & (2).)

C. *Analysis*

14

The People concede and we agree that amended section 1170, subdivision (b), applies retroactively to Rubalcaba's convictions, which are not yet final. But they argue there is no need to remand for resentencing because the trial court's sentencing decision comported with section 1170, subdivision (b)(3), to the extent it was based on three aggravating factors the jury found true beyond a reasonable doubt, therefore any error was harmless.

On this record, the People's argument that the jury necessarily found the aggravating factors beyond a reasonable doubt is correct, as far as it goes. We agree that the evidence showed the victims here were particularly vulnerable given their young age; Rubalcaba violated a position of trust and confidence in committing the offenses; and Rubalcaba committed numerous acts, as the jury found in the convictions and enhancements. However, the People's conclusion does not end our inquiry. As we pointed out in *People v. Lopez* (2022) 78 Cal.App.5th 459 (*Lopez*): "When a trial court increases a defendant's sentence by relying on factors that are inapplicable, duplicative, or improperly weighed, a reviewing court assesses the prejudice to the defendant by determining whether it is reasonably probable that a more favorable sentence would have otherwise been imposed absent the trial court's improper reliance on such factors. [Citation.] This is because ' "[d]efendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that 'informed discretion' than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record." [Citation.]' [Citations.] Therefore, where a trial court cannot have acted with ' " 'informed discretion,' " ' 'the appropriate remedy is to remand for resentencing unless the record "clearly indicate[s]" that the trial court would

15

have reached the same conclusion "even if it had been aware that it had such discretion." ' " (*Lopez, supra,* at p. 467.)

Here we cannot be sure the court properly weighed the appropriate factors because there was a mitigating factor articulated by the probation report and found by the trial court, that Rubalcaba had no prior conviction. Although the court considered this mitigating factor under the previous version of section 1170, it is unclear if it would accord it the same weight under the amended statute, which makes the mid-term sentence the presumptive one.

Further, from clues already in the record, it appears Rubalcaba might benefit from other provisions of the amended statute, that unless the aggravating circumstances outweigh the mitigating circumstances such that the lower term would be contrary to the interests of justice, the court shall order the lower term if defendant has experienced psychological, physical, or childhood trauma. (§ 1170, subd. (b)(6)(A) & (B).) After sentencing, defense counsel requested that a psychologist evaluate Rubalcaba's mental state "to prepare a [section] 288.1 report."[5] The court granted defense counsel's request, and permitted "the family if they wish to retain a psychologist in order to obtain some sort of report that they feel might assist [ ] Rubalcaba with respect to his housing at the Department of Corrections."

---

[5]    Section 288.1 provides: "Any person convicted of committing any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years shall not have his or her sentence suspended until the court obtains a report from a reputable psychiatrist , . . . who meets the standards set forth in Section 1027, as to the mental condition of that person."

The psychologist who evaluated Rubalcaba provided this diagnostic assessment: "Neurocognitive Disorder. He shows ongoing difficulty in environments with multiple stimuli. He has difficulty holding new information in mind. For example, he was unable to recall his social security number. According to his family input, he would remember the last four numbers, but had difficulty remembering the beginning of the sequence. He also showed difficulty with executive functioning, that is, planning and decision making. He developed a routine of certain habitual behaviors to give him some structure. He had difficulty completing multi-stage projects, including difficulty with multitasking. As noted above, the etiology of this disorder is difficult to pinpoint. . . . *Early development sequelae on the part of the defendant are not accessible for review at this point*." (Italics added.)[6] The defense had no occasion or opportunity to develop and present evidence of any psychological, physical, or childhood trauma that Rubalcaba might have experienced, because the statutory amendments were not in place at the time of his sentencing.

Because the record does not clearly establish how the court would have balanced the sentencing factors with the limitations imposed under Senate

---

[6] The psychologist also stated: "Results and data developed from the mental status examination point to a diagnostic impression of Neurocognitive Disorder. There are times where this disorder may be labeled dementia. Although dementia is the customary term for disorders linked to degenerative dementias, they usually affect older adults. The term Neurocognitive Disorder is widely used and often preferred for conditions affecting younger individuals. The Neurocognitive Disorder is somewhat broader than the term dementia. The etiology in this case can be difficult to pinpoint. There is also the issue of a relatively less than robust educational journey for the defendant. He denied that he had any major head injuries though he did acknowledge that he had been hit in the face by a cow which resulted in loss of teeth and loss of consciousness."

17

Bill No. 567 and amended section 1170, resentencing is warranted; remand is not an idle act. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893. 896.) We therefore remand the matter to the trial court for resentencing consistent with the current version of section 1170, subdivision (b). (See *Lopez, supra,* 78 Cal.App.5th at p. 468.)

IV. *Fines, Fees and Assessments*

Rubalcaba contends: "The trial court imposed the following legal financial obligations at sentencing: a $10,000 restitution fine, a $200 court security fee, and a $150 [criminal conviction] assessment. . . . Trial counsel did not ask the court to consider [his] ability to pay in setting these fees, and the trial court made no attempt to consider his ability to pay."[7] He relies on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 for his claim that such a determination is constitutionally required. He contends that an ability to pay determination is also required under the Eighth Amendment to the federal Constitution, the excessive fines clause, and California's constitutional guarantee of equal protection.

The California Supreme Court is presently considering whether courts must evaluate a defendant's ability to pay before imposing or executing fines, fees and assessments and which party bears the burden of proof. (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.)

---

7    The parties point out that the trial court orally imposed a $15,000 restitution fine and a $100 criminal assessment. Penal Code section 1202.4, subdivision (b)(1) states that the maximum restitution fine is $10,000 and Government Code section 70373, subdivision (a)(1) states that the criminal conviction assessment is $30 for each felony. The trial court erred in its oral pronouncement but the abstract of judgment and amended minute order correctly reflect that the restitution fine is $10,000 and the assessment is $30 per count.

Because we vacate Rubalcaba's sentence and remand the matter for resentencing, we need not reach the merits of these arguments; rather, he will have an opportunity to challenge the fines, fees and assessments on remand.

## DISPOSITION

The convictions are affirmed. We vacate the sentence and remand the matter for the trial court to resentence Rubalcaba in a manner consistent with this opinion, prepare a new abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.


O'ROURKE, Acting P. J.

WE CONCUR:


AARON, J.


IRION, J.